Justice Breyer,
with whom Justice Ginsburg joins,
dissenting.
This case involves the legitimacy of an affirmative-action adopted by the Dallas Fire Department. The Court of Appeals for the Fifth Circuit held that there was insufficient evidence of past discrimination in the Dallas Fire Department to justify the fire department’s policy of promoting some women and minorities over white males who had achieved scores within the same “band” on a civil service exam. See 150 F. 3d 438, 441 (1998); Pet. for Cert. 4. And the petitioners ask us to review that determination.
The defendants nation in support of the plan: (1) The Dallas Fire Department did not hire its first black firefighter until 1969. App. to Pet. for Cert. 72. (2) Blacks and Latinos comprised less than 1 percent of the fire department in 1972. Ibid. (3) In 1972, the Department of Justice concluded that the fire department had engaged in impermissible racial discrimination. Ibid. (4) In 1976, the Dallas Fire Department entered into a consent decree with the Department of Justice “to alleviate the effects of any past discrimination that might have occurred.” Id., at 62. (5) The consent decree and subsequent plans led to advances in the hiring of minorities and women, and, in 1988, 38.7 percent of the entry-level “fire and rescue officers” were black or Latino and 1.9 percent were women. See id., at 143. (6) In the upper ranks of the fire department, in 1988, blacks and Latinos made up 14.8 percent of the “driver-engineers,” 5.8 percent of the “lieutenants,” and 5.2 percent of the “executives/deputy chiefs.” Pet. for Cert. 4-5; App. to Pet. for Cert. 141-143. Women made up 1.6 percent of the “driver-engineers,” but there were no women “lieutenants” or “executives/deputy chiefs.” Ibid.
This Court has held that a of race-conscious measures that are narrowly tailored to remedy past discrimination by that entity does not violate the Equal Pro *1047 tection Clause. See, e.g., Adarand Constructors, Inc. v. Peña, 515 U. S. 200, 237 (1995); Richmond v. J. A. Croson Co., 488 U. S. 469, 507 (1989); United States v. Paradise, 480 U. S. 149, 167 (1987) (plurality opinion). And it has indicated that significant statistical disparities between the pool of those selected for a job and those eligible for the job may be used, among other things, to show past discrimination. See Croson, supra, at 501-502. In this case, there are both statistics and other evidentiary indicia of past discrimination, including a finding by the Department of Justice of a history of discrimination. Courts of Appeals apparently have upheld affirmative-action plans in other cities based on similar records. See McNamara v. Chicago, 138 F. 3d 1219, 1223-1224 (CA7), cert. denied, 525 U. S. 981 (1998); see also Stuart v. Roche, 951 F. 2d 446, 450-452 (CA1 1991), cert. denied, 504 U. S. 913 (1992).
In light of the many affirmative-action plans in effect throughout the Nation, the question presented, concerning the means of proving past discrimination, is an important one; the lower courts are divided; and the Fifth Circuit’s decision may be questionable in light of our precedents. Accordingly, I respectfully dissent from the denial of certiorari in this ease.